# 23-454

## United States Court of Appeals
### *for the*
### Second Circuit

Robert Ferrara,

*Plaintiff-Appellant,*

v.

Sterling, Inc., DBA Kay Jewelers,

*Defendant-Appellee.*

# BRIEF OF PLAINTIFF-APPELLANT

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277
*Counsel for Plaintiff-Appellant*

## Table of Contents

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      1. Ferrara's employment with Defendant . . . . . . . . . . . . . . . . . . . . . . . . . 1

      2. Ferrara's job performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      3. The hostile work environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

The district court improperly granted summary judgment on Plaintiff's
hostile work environment and retaliation claims . . . . . . . . . . . . . . . . . . . . . . 8

Point I:   The jury may rule in Plaintiff's favor on the hostile work
          environment claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A. Plaintiff's supervisor subjected him to a series of age-related
         insults . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B. The jury may impute the hostile work environment to
         Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Point II: The jury may rule in Plaintiff's favor on the retaliation claim . . . . . . . 21

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Table of Authorities**

Aulicino v. New York City Dept. of Homeless Servs.,
580 F.3d 73 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Bentley v. AutoZoners, LLC,
935 F.3d 76 (2d Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Burlington Indus., Inc. v. Ellerth,
524 U.S. 742 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Carlton v. Mystic Transp., Inc.,
202 F.3d 129 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Davis-Garett v. Urb. Outfitters, Inc.,
921 F.3d 30 (2d Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Distasio v. Perkin Elmer Corp.,
157 F.3d 55 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Faragher v. City of Boca Raton,
524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Ferrell v. Leake & Watts Servs., Inc.,
83 Fed. Appx. 342 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Gallagher v. Delaney,
139 F.3d 338 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

Gallo v. Prudential Residential Servs., Ltd.,
22 F.3d 1219 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

Gordon v. New York City Bd. of Educ.,
232 F.3d 111 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Gorzynski v. JetBlue Airways Corp.,
596 F.3d 93 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Green v. Town of E. Haven,
  952 F.3d 394 (2d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Henry v. Wyeth Pharms., Inc.,
  616 F.3d 134 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Kassner v. 2nd Ave. Delicatessen Inc.,
  496 F.3d 229 (2d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Kaytor v. Elec. Boat Corp.,
  609 F.3d 537 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rasmy v. Marriott Int'l, Inc.,
  952 F.3d 379 (2d Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Redd v. N.Y. State Div. of Parole,
  678 F.3d 166 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Reeves v. Sanderson Plumbing Prod., Inc.,
  530 U.S. 133 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rivera v. Rochester Genesee Reg'l Transp. Auth.,
  743 F.3d 11 (2d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Schreiber v. Worldco, LLC,
  324 F. Supp. 2d 512 (S.D.N.Y. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Stern v. Trustees of Columbia Univ.,
  131 F.3d 305 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Summa v. Hofstra Univ.,
  708 F.3d 115 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Terry v. Ashcroft,
  336 F.3d 128 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Vega v. Hempstead Union Free Sch. Dist.,
  801 F.3d 72 (2d Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wahlstrom v. Metro-N. Commuter R. Co.,
  89 F. Supp. 2d 506 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

iv

## Jurisdiction

As Plaintiff-Appellant brought this action pursuant to the Age Discrimination in Employment Act, the district court had subject matter jurisdiction over this case. On March 16, 2023, the district court granted Defendants' motion for summary judgment on all claims, entering final judgment that day. (JA 298). As Plaintiff timely filed a notice of appeal on March 29, 2023 (JA 297), this Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Statement of the Case

Plaintiff-Appellant Robert Ferrara brought this action pursuant to the Age Discrimination in Employment Act and the New York State Executive Law, alleging that he suffered discrimination because of age. Specifically, Plaintiff asserts that he was subjected to a hostile work environment and was retaliated against for speaking out against discrimination. The district court granted Defendant-Appellee's motion for summary judgment on all claims. That ruling is reported at 2023 WL 2537424 (N.D.N.Y. March 16, 2023).

## Statement of Facts

### 1. Ferrara's employment with Defendant.

Plaintiff Robert Ferrara was born in 1959. (JA 264 n.3). From 2003 until 2007, he worked for Defendant Sterling as a store manager. (JA 143 ¶ 4). Ferrara left Sterling in 2007 to accept a position at Ultra Diamonds, where he was a

district/personnel manager through 2013. *Id*. at ¶ 5. In 2013, after Sterling acquired Ultra, Ferrara returned to Sterling where he worked as a district manager until September 2017, when he was demoted to the manager position at Kay Jewelers in Albany. (JA 143 ¶ 6; JA 155 ¶ 72). That demotion is the subject of Plaintiff's retaliation claim.

In 2016, Christopher Gullo, Vice President for Regional Operations, became Plaintiff's supervisor. (JA 246 ¶ 2). At the time, Ferrara was a district manager with oversight over 14 stores. (*Id*.) On August 30, 2017, Plaintiff met with Gullo, who told Plaintiff that Sterling was removing him as district manager, effective the following week. (*Id*. at 155). Because of this demotion, Plaintiff's salary went from $118,000 (plus a company car and pension benefits) to $67,000, with no company car. (JA 247 ¶ 3). After his demotion, Plaintiff became the store manager at a Zales outlet in the Colonie Center Mall in Albany. (*Id*.)

## 2. Ferrara's job performance.

Prior to his demotion in August 2017, Plaintiff won numerous awards. In 2013, Plaintiff was awarded the Sterling Best 2013 Award. (JA 169). Because of his job performance, along with other top performers, Plaintiff won a week-long Caribbean cruise. (JA 170). During the cruise, Ferrara had a celebratory dinner with Joe Gifford, Vice President of Regional Operations, and on July 9, 2014, he

received a hand-written card signed by Gifford. (JA 171). In 2014, due to his performance, Plaintiff was chosen to attend Le Vian University. (JA 172).

Plaintiff's annual performance evaluation for 2014 indicates "partially achieved." (*Id*.); *see generally* JA 54 ("meets some, not all" objectives for May 2015). In the September 2015 performance review, Plaintiff was assessed as "meets some, not all" performance goals. (JA 60). Plaintiff's performance evaluation for March 2016 indicates that he "exceed[ed] some" objectives. (JA 74). Plaintiff's annual performance review for 2017 indicates "fully achieved." (JA 177).

Plaintiff was awarded a Certificate of Achievement for sales and was second place in the region through May 2015. (JA 178). He won a Certificate of Achievement for earning 83.10% in Customer Experience Index, first place in the region, in 2015. (JA 179). Plaintiff was also awarded a Certificate of Achievement for earning 108.29%, first place in the region, through May 2015. (JA 180). Plaintiff won a Certificate of Achievement for earning 114.94% Repair, first place in the region, through May 2015. (JA 181). He also won a Certificate of Achievement for earning 41.27% PPP, second place in the region, through May 2015. (JA 182).

On March 19, 2015, Plaintiff received a congratulatory email from his supervisor, Joe Beck, stating he was doing an "awesome job" and should "Keep up

with the GREAT work." (JA 183) (emphasis in original). By November 23, 2015, Plaintiff's district achieved a 6 out of 6 in performance standards. (JA 184). Plaintiff was awarded a plaque proclaiming his success in 2015 because his district had "the Highest Net Profit Percentage Increase" nationwide. (JA 185).

At the 2016 Signet Jewelers Manager Leadership Conference, Plaintiff won the District Manager of the Year Award, receiving the national award in September 2016. (JA 186). Plaintiff was chosen to attend a Signet event, the Tolkowsky True Brilliance Training in Newark, New Jersey in July 2016. (JA 190). Also in 2016, Plaintiff received a Certificate of Achievement for meeting a 1.5% Sales Standard, third place in the region. (JA 191). That year, Plaintiff received a Certificate of Achievement for 108.98% Credit Applications, third place in the region; a Certificate of Achievement for 62.75% Add-Ons, second place in the region; a Certificate of Achievement for 84.9% Guest Experience Index, first place in the region for 2016; a Certificate of Achievement for 105.0% Credit Applications, second place in the region for 2016; a Certificate of Achievement for 62.8% Repair Margin, second place in the region for 2016; a Certificate of Achievement for 64.8% Extended Service Plans, third place in the region for 2016; and a Certificate of Achievement for 111.2% Repair Sales, second place in the region for 2016. (JA 192-200). Plaintiff won a trip to Cabo San Lucas based upon the fourth quarter 2015 sales for his district. (JA 201-03). On January 10, 2018, Plaintiff and his team

won a Certificate of Recognition for 102% Sales YTD, for 2017. (JA 204). On July 7, 2017, one month prior to his demotion, Plaintiff was selected to attend Defendant's National Conference at Walt Disney World. (JA 205-08).

### 3. The hostile work environment.

Despite these accolades, on April 6, 2017, only one day after Plaintiff told Gullo to stop calling him a "dinosaur," Gullo criticized Plaintiff's job performance. (JA 211 ¶ 5). Over the course of six months to a year before Plaintiff's demotion on August 30, 2017, Gullo repeatedly called Plaintiff a dinosaur, implying he was too old to perform his duties. *Id.* at ¶ 4. Gullo called Plaintiff a dinosaur dozens of times and said he had been "hatched." (*Id.*) Only one day prior to Plaintiff's demotion, he asked Gullo to stop the ageist insults. *Id.* at ¶ 5.

Gullo insisted that Plaintiff did not know how to speak with the younger managers and did not understand millennials. *Id.* at ¶ 4. Gullo frequently told Plaintiff that he did not know how to be a "modern-day" manager (JA 218), demonstrating Gullo's stereotypic belief that, because Plaintiff was older, he could not perform effectively. Gullo also ridiculed Plaintiff's attaché case, which had a pull handle and wheels – calling it an "old man's bag" – and stating that Plaintiff used the handle as a cane. (JA 211 ¶ 4).

Plaintiff complained about the age discrimination surrounding his demotion on September 1, 2017, when he contacted Human Resources. *Id.* at ¶ 6. On January

2, 2018, HR notified Plaintiff that it had completed its investigation and had taken "appropriate actions." (*Id*). It is not clear whether HR's email notifications conveyed that the investigation concerned the discriminatory demotion or the hostile work environment. (JA 217-222). In any event, Plaintiff's demotion had not been corrected, and other than conclusory assertions that it did so, the record does not show that Defendants took any remedial action in response to Plaintiff's complaints about age discrimination. Nor does the record demonstrate what steps were undertaken to investigate Plaintiff's complaints, or even if Defendant had undertaken a thorough investigation. (JA 211 ¶ 6). The summary judgment record contains no record of the investigation, including whom HR had interviewed or what documents HR had reviewed. On the advice of his physician and due to work-related stress and anxiety, Plaintiff resigned his position on August 9, 2018. (JA 227 ¶ 14).

## Issues Presented

1. Where Plaintiff produced evidence that his supervisor had repeatedly made ageist insults about him, did Plaintiff allege a hostile work environment on the basis of age?

2. Where Plaintiff produced evidence that (1) his supervisor had repeatedly made ageist insults before demoting him and (2) the record does not conclusively

demonstrate that he was a poor performer, can Plaintiff prevail on his retaliation claim?

3. Where Plaintiff was demoted shortly after he objected to the hostile work environment, and the record shows he was commended for his performance within a year of his demotion, may a jury find that he suffered retaliation for objecting to age discrimination?

## Summary of Argument

This case is ripe for trial. The record shows that Plaintiff's supervisor, Christopher Gullo, repeatedly made ageist insults about Plaintiff's ability to work with younger people and stereotyped him as an out-of-touch older employee. Crediting Plaintiff's testimony, the jury may find that Gullo made these offensive comments on a regular basis. In holding that a jury cannot find that Gullo created a hostile work environment, the district court mischaracterized the legal standard in stating Plaintiff must show the ageist comments were "severe *and* pervasive," when the correct test is "severe *or* pervasive." That distinction makes all the difference, as this Court holds that jury may find the work environment was permeated with discriminatory insults if the plaintiff testifies the comments were made on a regular basis. While the district court did not resolve the issue of employer liability, there is no concrete evidence that Defendant investigated Plaintiff's complaints or that it did so in good faith. Defendant only presented a

conclusory statement that the investigation revealed there was no discriminatory intent in Plaintiff's demotion, and there is nothing in the record to support Defendant's affirmative defense that it promptly and thoroughly investigated Plaintiff's age harassment complaint.

Plaintiff may also prevail on his claim that he was demoted in August 2017 because of his age. As the district court noted, "Plaintiff alleges that his supervisor, Mr. Gullo, made ageist comments toward him; and, when he asked Mr. Gullo to stop making those comments, Mr. Gullo demoted him the next day." (JA 278). While the district court accepted Defendant's argument that Plaintiff was demoted because of his job performance, the record shows that Defendant had issued Plaintiff numerous commendations and good performance certificates in the year prior to his demotion. Along with Gullo's ageist comments and evidence that Defendant has overstated its concerns about Plaintiff's job performance, the jury may find that Defendant's articulated reason for the demotion was false and that the real reason was Plaintiff's objections to Gullo's discriminatory comments.

## Argument

### The district court improperly granted summary judgment on Plaintiff's hostile work environment and retaliation claims

"In determining whether the moving party is entitled to judgment as a matter of law, or whether instead there is sufficient evidence in the opposing party's favor to create a genuine issue of material fact to be tried, the district court may not

properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must 'review all of the evidence in the record.'" *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 54 5-4 (2d Cir. 2010). "This is especially so in considering claims of hostile work environment . . . And in reviewing all of the evidence to determine whether judgment as a matter of law is appropriate, 'the court must draw all reasonable inferences in favor of the nonmoving party,' 'even though contrary inferences might reasonably be drawn.'" (*Id.*)

Put another way, "[s]ummary judgment is inappropriate when the admissible materials in the record 'make it arguable' that the claim has merit, for the court in considering such a motion 'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" (*Id.*). Relatedly, "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. . . . In sum, summary judgment is proper only when, with all permissible inferences and credibility questions resolved in favor of the party against whom judgment is sought, 'there can be but one reasonable conclusion as to the verdict.'"(*Id.*)

The standard of review on appeal from the grant of summary judgment is d*e novo*. *Id.* at 54 6.

**Point I**

**The jury may rule in Plaintiff's favor on the hostile work environment claim**

"To prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013). Courts view the evidence "cumulatively in order to obtain a realistic view of the work environment . . . and to determine whether they alter[ed] the conditions of [plaintiff's] employment and create[d] an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 21 (2d Cir. 2014). "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Redd v. N.Y. State Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) ("one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant").

"While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that '[w]hile a

mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*' The environment need not be 'unendurable' or 'intolerable.' Nor must the victim's 'psychological well-being' be damaged. In short, 'the fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious cases.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (emphasis in original).

**A. Plaintiff's supervisor subjected him to series of age-related insults.**

Plaintiff asserts that over the course of six months to a year prior to his demotion on August 30, 2017, his supervisor subjected him to numerous ageist insults. (JA 211 ¶ 4). Gullo called Plaintiff a dinosaur "dozens of times," implying that Plaintiff was too old to perform his duties. On April 6, 2017, only one day after Plaintiff told Gullo to stop calling him a dinosaur, Gullo criticized his job performance. *Id*. at ¶ 5.

Gullo called Plaintiff a dinosaur a few weeks before his demotion and insisted that Plaintiff did not know how to speak with younger managers and did not understand millennials. *Id*. at ¶ 4. These comments demonstrated Gullo's stereotypic belief that, since Plaintiff was older, he was not capable of performing

effectively. (*Id.*) Gullo also said Plaintiff was a dinosaur who had been "hatched." In addition, Gullo ridiculed Plaintiff's "old man's" attaché case. (*Id.*)

Soon thereafter, on August 30, 2017, Gullo told Plaintiff that he had been demoted. (JA 210-11 ¶ 3). Plaintiff notified Human Resources the next day that Gullo had created a hostile work environment. (JA 211 ¶ 6). After having difficulties reaching Brian Watson, the regional Human Resources manager (JA 29 at 166-68), Plaintiff had a phone meeting with Kazam Moghtader, Vice President, Human Resources Field Operations, "and pretty much reported the entire ordeal to him." *Id*. at 166. While Moghtader told Plaintiff that he "would get back to me" (JA 30 at 169), by November 25, 2017, Plaintiff had not heard anything from management about the investigation for three months. (JA 217-18). That day, Plaintiff sent Moghtader an email requesting an update on his "retaliatory involuntary demotion" and the investigation into his complaint about Gullo. (*Id.*) Plaintiff wrote, "I spoke with you about this on September 7, 2017[.]" (JA 218). Plaintiff told HR that he had last heard from HR about the investigation on September 27, 2017. (*Id.*) In this email, Plaintiff restated his allegations against Gullo (*Id.*) Two days later, Moghtader responded: "I have closed out the investigation but have another step built in to close the loop." (JA 217). Moghtader again contacted Plaintiff on January 3, 2018: "we have completed our investigation and based on the findings have taken the appropriate actions." (*Id.*)

Following the investigation, Defendant intended that Gullo would retain supervisory authority over Plaintiff, who testified that while he "left [Gullo's] direct line of supervision," when he got to Kay's "there was an announcement made that there was gonna be a realignment and Chris Gullo was being put over JoAnn Falta in January or February[.]" (JA 28 at 162). This meant Plaintiff would again have direct contact with Gullo "every time he did store visits." (*Id.*) By this point, Plaintiff's "nerves were shot" and his stress had reached the point that he took personal leave. *Id.* at 162-63. Gullo left the company around this time. *Id.* at 163.

Gullo's barrage of ageist insults supports Plaintiff's hostile work environment claim under the Age Discrimination in Employment Act and the New York Executive Law. These comments made explicit reference to Plaintiff's age, demonstrating his view that older employees are not suitable for the workplace. *Compare Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46-47 (2d Cir. 2019) (jury may find in plaintiff's favor on her hostile work environment claim where her supervisor "became abusive, 'treat[ing her] in a hostile and intimidating manner'; that the apparel manager . . . began to ignore Garett and then began to criticize her; that Garett was excluded from management meetings, which were scheduled to coincide with her absences; that little more than a week after she became a supervisor (a position for which Garett, unlike younger employees, was given no

training, [supervisors] berated her, saying that her performance was 'terrible,' that she was 'the worst apparel supervisor that they had ever seen in their lives,' that her 'pace was too slow,' that her 'energy level' was too slow; and that [a supervisor], sometimes in the presence of other employees, criticized Garett's 'speed' and 'pace' 'almost daily'"); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (reversing Rule 12 dismissal where "the complaint alleges 'continued harassment' of Kassner and alleges facts from which we may infer pleading of hostile work environment claims as to her; the complaint states that 'Lebewohl and several of his subordinates have repeatedly made degrading comments towards Ms. Kassner, including, but not limited to, 'drop dead,' 'retire early,' 'take off all of that make-up[,]' and 'take off your wig'").

In granting summary judgment for Defendant on the hostile work environment claim, the district court noted that Plaintiff alleged that Gullo "repeatedly referred to Plaintiff in the six months to a year prior to his demotion as a 'dinosaur' on countless occasions,' who had been 'hatched,'" insisted that he did not know how to speak with younger managers or understand millennials or function as "modern-day" manger, ridiculed his "old man's bag" and used the handle as a cane, and called him grandpa in the presence of his family members and district managers. (JA 271-72). However, the district court held,

> Mr. Gullo's allegedly ageist remarks to Plaintiff constituted offhand,
> isolated comments that, while inappropriate, were not so severe and

pervasive that they constituted a hostile work environment. Plaintiff did not complain about the comments until after he was demoted, which occurred between six months and one year after Mr. Gullo allegedly began making them. Plaintiff does not point to any evidence from other employees who overheard these comments, experienced such comments directed at them, or to whom he may have complained about such comments. Even when viewing the facts in the light most favorable to Plaintiff, he has failed to show that Mr. Gullo's occasional remarks to him about his age, including that he was a "dinosaur," would have objectively impacted an employee so severely that they would have altered the conditions of his or her employment.

(JA 273).

This Court should reverse. To the extent this Court deems this issue a close one, the jury should determine whether the work environment was sufficiently hostile to permit a verdict in Plaintiff's favor. *See Gallagher v. Delaney*, 139 F.3d 338, 347 (2d Cir. 1998) ("An Article III judge is not a hierophant of social graces. Evaluation of ambiguous acts such as those revealed by the potential evidence in this case presents an issue for the jury").

The district court applied the wrong standard in asking whether the work environment was "severe *and* pervasive." (JA 273) (emphasis supplied). The test is severe *or* pervasive. *See Redd*, 678 F.3d at 175. Applying a heightened test yields the wrong result. Plaintiff need not show he sustained "severe" harassment if the ageist insults were "pervasive." In ruling against Plaintiff, the district court emphasized that Plaintiff "has failed to show that Mr. Gullo's occasional remarks to him about his age, including that he was a 'dinosaur,' would have objectively

15

impacted an employee so *severely* that they would have altered the conditions of his or her employment." (JA 273) (emphasis supplied). As demonstrated above, Plaintiff need not show the comments were severe so long as they were pervasive. And a jury may find that countless comments about an older employee's age would alter the work environment "for the worse." *Terry*, 336 F.3d at 148.

The district court held that Gullo subjected Plaintiff to "occasional remarks" about his age. (JA 273). The record shows otherwise. As Plaintiff asserts that Gullo repeatedly and on "countless occasions" made these comments, the jury may find that the age-related insults were sufficiently pervasive to violate the ADEA and the New York HRL. In assessing whether the work environment was discriminatory, relevant circumstances include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

Plaintiffs are not required to "recount each and every instance of abuse to show pervasiveness." *Pucino v. Verizon Wireless Comm.*, 618 F.3d 112, 119-120 (2d Cir. 2010). In *Pucino*, this Court demonstrated how this legal test applies when the plaintiff claims the offending coworker made repeated comments that disparaged the plaintiff's protected characteristic, noting that in *Torres v. Pisano,* 116 F.3d 625 (2d Cir. 1997), the plaintiff testified that a supervisor "constantly

harassed her — so often that she 'lost count' — but that she could recall the exact dates and circumstances of only a few incidents of harassment." *Id.* at 631. The *Torres* court "explained that 'If a jury were to credit [the plaintiff's] general allegations of constant abuse, which were confirmed by her coworkers, it could reasonably find pervasive harassment, even in the absence of specific details about each incident.'" *Pucino*, 618 F.3d at 120. Moreover, in *Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001)*, this Court credited testimony in support of a hostile work environment claim that plaintiff was "constantly" or "daily" made the victim of unwanted physical contact. (*Id.*) In support of its analysis, *Pucino* also cited *Brennan v. Metrop. Opera Ass'n,* 192 F.3d 310, 318 (2d Cir. 1999) ("[a] plaintiff need not present a list of specific acts").

Ultimately, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). As the record permits the inference that Gullo repeatedly directed age-related insults toward Plaintiff, the jury may find that Plaintiff endured a hostile work environment on the basis of age. This Court should vacate the grant of summary judgment and remand this issue for trial.

**B. The jury may impute Gullo's comments to Defendant.**

"When, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer. But

even then, the defending employer may be permitted, subject to proof by a preponderance of the evidence, to raise the *Faragher/Ellerth* affirmative defense to liability or damages. This defense consists of two elements: that (1) "the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citing *inter alia Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998)).

As *Faragher/Ellerth* provides the employer with an affirmative defense, to avoid liability, Defendant has the burden of proving it took effective steps to remedy and correct the hostile work environment. *See Faragher*, 524 U.S. at 807 ("When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, *see* Fed. Rule Civ. Proc. 8(c)"). As Gullo was Plaintiff's immediate supervisor who headed the department and issued performance appraisals and counseling memos with performance objectives (JA 76-83), he bound the company through his hostile conduct. *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 91-92 (2d Cir. 2019).

Plaintiff spoke with Kazam Moghtader, Vice President, Human Resources Field Operations, about the hostile work environment "and pretty much reported the entire ordeal to him." (JA 29 at 166). Since Plaintiff reported these comments to Moghtader, contrary to Defendant's position on the summary judgment motion, *see* Def. Rule 56.1 ¶ 88 (JA 157), he was not required to contact the corporate hotline. *Gorzynski*, 593 F.3d at 104-05. Once Defendant was on notice of the harassment, it had a duty to investigate and remedy the problem.

"An employer who is on notice of harassing behavior has a duty to 'take reasonable steps to remedy it.' The reasonableness of an employer's response must be assessed based on the totality of circumstances. 'If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate.' However, so long as the employer has taken 'prompt and appropriate corrective action,' the remedy shall be adjudged sufficient to remove any question of fact as to the employer's liability." *Wahlstrom v. Metro-N. Commuter R. Co.,* 89 F. Supp. 2d 506, 525 (S.D.N.Y. 2000) (quoting *Distasio v. Perkin Elmer Corp.,* 157 F.3d 55, 65 (2d Cir. 1998), and *Gallagher,* 139 F.3d at 348, and holding that Metro–North's response was both prompt and effective because "'[a]s soon as [plaintiff] informed [Gormley–O'Connor] that she was being sexually harassed by [Chapman], [Gormley–O'Connor] took substantial steps to see that [plaintiff's] complaint was taken seriously.' *The investigation*

*began immediately after plaintiff complained about the incident and, within two days, all the pertinent witnesses had been inter*viewed") (emphasis supplied).

The district court did not resolve the issue of employer liability, determining instead that Plaintiff did not suffer a hostile work environment. In any event, on the summary judgment motion, Defendant produced no evidence that it undertook a good-faith and timely investigation into Plaintiff's allegations about the hostile work environment, and its Rule 56.1 statement is silent on this issue other than its conclusory statement that "HR ultimately concluded that there was no discriminatory intent motivating Ferrara's demotion after completing an investigation." (JA 158 ¶ 92). That investigation, assuming it took place, concerned Plaintiff's demotion, not the hostile work environment, even though Plaintiff told Human Resources about Gullo's numerous ageist insults. (JA 218). While Defendant told Plaintiff in January 2018 that it had investigated his complaint, that email did not specify whether the investigation concerned the hostile work environment or the discriminatory demotion, and this email was sent four months after Plaintiff had complained about the hostile work environment. (JA 221). The jury may thus find that Defendant did not promptly investigate or handle Plaintiff's complaint. As a supervisor had subjected Plaintiff to ageist harassment, Defendant had the burden of proving this affirmative defense under *Faragher/Ellerth*. The

jury may reject that affirmative defense, and this Court should not affirm the grant of summary judgment on this basis.

## Point II

### The jury may rule in Plaintiff's favor on the retaliation claim

"To establish a *prima facie* case of retaliation, [Plaintiff] must show (1) that []he participated in a protected activity, (2) that []he suffered an adverse employment action, and (3) that there was a causal connection between h[is] engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110. Plaintiffs bear a minimal burden in proving a *prima facie* case. *Green v. Town of E. Haven*, 952 F.3d 394, 404 (2d Cir. 2020).

The district court held that Plaintiff made out a *prima facie* case of retaliation, noting that "Plaintiff alleges that his supervisor, Mr. Gullo, made ageist comments toward him; and, when he asked Mr. Gullo to stop making those comments, Mr. Gullo demoted him the next day." (JA 278). Moreover, while "Plaintiff did not make any formal complaints to HR about Mr. Gullo's allegedly ageist comments until *after* he was demoted . . . , the Court finds that Plaintiff's conduct in making an informal complaint to a supervisor – Mr. Gullo – about allegedly discriminatory behavior constitutes protected activity of which Defendant was aware." (*Id*.) (emphasis supplied). "Finally, Plaintiff shows that a causal connection exists between his demotion and the adverse employment

activity through both the temporal proximity between his complaint to Mr. Gullo and the fact that Mr. Gullo demoted him the next day, as well as evidence of animus in that Mr. Gullo was the individual who made the allegedly ageist remarks to Plaintiff. As such, the Court finds that Plaintiff has established his prima facie case of retaliation in violation of the ADEA and the NYSHRL." (*Id.*); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82 (2d Cir. 2015) ("When a supervisor retaliates against an employee because he complained of discrimination, the retaliation constitutes intentional discrimination against him").

"Once a plaintiff makes out a *prima facie* case of retaliation under the burden-shifting framework, the defendant may rebut the 'presumption of retaliation by 'articulat[ing] a legitimate, non-retaliatory reason for the adverse employment action.' If the defendant provides an explanation, the plaintiff must prove 'that the desire to retaliate was the but-for cause of the challenged employment action.'" *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020). As the district court noted, Defendant articulated such a reason: poor job performance. (JA 278-281).

"The plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000). "Although the presumption of discrimination 'drops out of the picture'

22

once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's *prima facie* case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" (*Id.*)

"As our cases hold, the question of what motivated an employer's desire to fire a worker is a quintessential jury function." *Rasmy*, 952 F.3d at 392 (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997) ("[i]n assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought"); *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1224 (2d Cir. 1994) ("A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue")). Moreover,

> [P]roof is seldom available with respect to an employer's mental processes. Instead, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file. Ordinarily, plaintiff's evidence establishing a *prima facie* case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial. Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact.

*Rasmy*, 952 F.3d at 342.

"In proving a case under [the ADEA], following the defendant's proffer of a justification, a plaintiff need only show that the defendant was in fact motivated at least in part by the prohibited discriminatory animus. A plaintiff has no obligation to prove that the employer's innocent explanation is dishonest, in the sense of intentionally furnishing a justification known to be false. The crucial element of a claim under [the ADEA] is discrimination, not dishonesty." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010) (citing *inter alia Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 117 (2d Cir. 2000) (plaintiff can prevail "by proving that a discriminatory motive, more likely than not, motivated the defendants"); *Aulicino v. New York City Dept. of Homeless Servs.,* 580 F.3d 73, 80 (2d Cir. 2009) (to prevail, plaintiff must prove "that the defendant's employment decision was more likely than not based in whole or in part on discrimination")).

The jury may also find that Defendant's articulated reason for Plaintiff's demotion was pretext and that the real reason was age discrimination. Separate and apart from the pretext inquiry, *see Henry*, 616 F.3d at 156, Gullo's numerous discriminatory comments reveal Defendant's ageist intent. Verbal comments may constitute evidence of discrimination. *See e.g. Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 518 (S.D.N.Y. 2004) ("Verbal comments constitute evidence of discriminatory motivation when a plaintiff demonstrates that a nexus exists between the allegedly discriminatory statements and a defendant's decision to

24

discharge the plaintiff"). "Although evidence of one stray comment by itself is usually not sufficient proof to show age discrimination, that stray comment may bear a more ominous significance' when considered within the totality of all the evidence." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000).

Gullo's discriminatory comments reflect ageist bias and were expressed shortly before Plainitff was demoted during a discussion about his job performance. At the same time, in response to Defendant's claim that it took adverse action against Plaintiff because of his poor performance, as demonstrated in Statement of Facts § 2, and which the district court recognized on the summary judgment motion (JA 282), he won numerous company awards and commendations. The jury must determine whether age was the real reason for Plaintiff's demotion, and whether the conflicting evidence about his job performance supports Defendant's argument that age was not the but-for reason.

On the summary judgment motion, Defendant argued that no reasonable jury can rule in Plaintiff's favor on this claim because "there is an overwhelming amount of evidence showing that Plaintiff had a long history of well-documented performance issues stemming from his time as a District Manager when he was overseen by two different supervisors." (Def. Br. at 14, ECF 41-1). The district court agreed, ruling that "although Plaintiff showed some evidence of positive achievements either unrelated to sales or during a time period more than one year

prior to his demotion, he failed to "submit [] any evidence that he won awards in the latter half of 2017 or 2017, which would have been within the year leading up to his demotion." (JA 283). In fact, the record shows that Plaintiff did receive such awards: on January 10, 2018, Plaintiff was commended for 102% sales for year-to-date (JA 204); and for fiscal year 2016, he was recognized for (1) 1.5% sales standard, third place in the region (JA 191); (2) 84.9% guest experience index, first place in the region (JA 195); (3) 105% credit applications, second place in the region (JA 196); (4) 60.7% add on, second place in the region (JA 197); (5) 62.8% repair margin, second place in the region (JA 198); and (6) 11.2% repair sales, second place in the region. (JA 200). These awards and commendations honored Plaintiff for 2016 and 2017, within a year of his demotion. Moreover, his negative performance review for November 2016 (JA 76-77) and two counseling memos from January and June 2017 (JA 79-83), were signed by Gullo, whose ageist insults rendered these evaluations unreliable. *Compare Ferrell v. Leake & Watts Servs., Inc.*, 83 Fed. Appx. 342, 344-45, 347 (2d Cir. 2003) (reversing the grant of summary judgment in age discrimination case where plaintiff "alleges that the vice-principal at Biondi stated publicly, near the time that her employment was terminated, that Ferrell was 'too old to be in the classroom,'" and that supervisor drafted all seven of plaintiff's probationary reports that were written in connection with Ferrell's probation"). Considering the timing of Plaintiff's demotion, Gullo's

discriminatory comments, and evidence that Plaintiff had well-performed his duties, only the jury may resolve why Defendant demoted Plaintiff. *See Gallo*, 22 F.3d at 1214.

## Conclusion

This Court should vacate the grant of summary judgment on Plaintiff's hostile work environment and retaliation claims and remand this case for trial.

Dated: July 3, 2023

Respectfully submitted,

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, N.Y. 12561
(845) 469-1277

Counsel for Plaintiff-Appellant

## Certification

Stephen Bergstein, counsel for Plaintiff-Appellant, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 6,270 words.

Stephen Bergstein