# 23-454

## United States Court of Appeals
### *for the*
## Second Circuit

Robert Ferrara,

*Plaintiff-Appellant,*

v.

Sterling, Inc., DBA Kay Jewelers,

*Defendant-Appellee.*

**On appeal from a Judgement of the United States
District Court for the Northern District of New York**

## REPLY BRIEF OF PLAINTIFF-APPELLANT

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277
*Counsel for Plaintiff-Appellant*

# Table of Contents

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Point I: The jury may rule in Plaintiff's favor on the hostile work
environment claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. The district court applied the wrong legal standard . . . . . . . . . . . . . . . . . 2

B. The jury may find that Plaintiff suffered pervasive harassment . . . . . . . . 2

1. Gullo's comments were not "stray remarks" . . . . . . . . . . . . . . . . . . . . 3

2. Gullo's comments were enough to create a hostile work
environment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3. The timing of Plaintiff's complaint is not dispositive . . . . . . . . . . . . 6

4. The harassment altered Plaintiff's work environment . . . . . . . . . . . . 7

5. The State Division of Human Rights determination has no
preclusive effect. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. Defendant is not entitled to the *Faragher/Ellerth* affirmative
defense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1. The jury may find that Plaintiff did not wait too long to
complain about the harassment . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. There is no evidence that Defendant investigated Plaintiff's
harassment complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3. The jury may find that Gullo's reassignment had nothing to
do with Plaintiff. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Point II:  Plaintiff may prevail on his retaliation claim . . . . . . . . . . . . . . . . . . . . 14

    A. Gullo participated in the decision to demote Plaintiff, tainting
       the process as a whole. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B. Gullo's comments about Plaintiff's age are relevant to the
       demotion claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    C. The jury may reject Defendant's claim that Plaintiff was a poor
       performer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# Table of Authorities

Astoria Fed. Sav. & Loan Assn. v. Solimino,
    501 U.S. 104 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bickerstaff v. Vassar Coll.,
    196 F.3d 435 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Bunk v. General Services Admin.,
    408 F. Supp. 2d 153 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Burlington Indus., Inc. v. Ellerth,
    524 U.S. 742 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cardenas v. Massey,
    269 F.3d 251 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Clegg v. Falcon Plastics, Inc.,
    174 Fed. Appx. 18 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Craig v. M & O Agencies, Inc.,
    496 F.3d 1047 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gorzynski v. JetBlue Airways Corp.,
    596 F.3d 93 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Harris v. Forklift Sys., Inc.,
    510 U.S. 17 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harrison v. Eddy Potash, Inc.,
    248 F.3d 1014 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Henry v. Wyeth Pharms., Inc.,
    616 F.3d 134 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Holcomb v. Iona Coll.,
    521 F.3d 130 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Holtz v. Rockefeller & Co.,
    258 F.3d 62 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Kaytor v. Elec. Boat Corp.,
    609 F.3d 537 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kosakow v. New Rochelle Radiology Assoc., P.C.,
    274 F.3d 706 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Owens v. New York City Hous. Auth.,
    934 F.2d 405 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pucino v. Verizon Wireless Comm.,
    618 F.3d 112 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Rasmy v. Marriott Int'l, Inc.,
    952 F.3d 379 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

Sorlucco v. New York City Police Dept.,
    971 F.2d 864 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Torres v. Pisano,
    116 F.3d 625 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Watts v. Kroger Co.,
    170 F.3d 505 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## Introduction

In opposition to Robert Ferrara's appeal from the grant of summary judgment on his hostile work environment and discriminatory demotion claims, Defendant Sterling, Inc., argues the facts and downplays the evidence in support of Plaintiff's claims.

First, Defendant overlooks Plaintiff's sworn statement that his supervisor, Christopher Gullo, repeatedly insulted him on the basis of Plaintiff's age. This evidence supports a finding that the harassment was pervasive under the Age Discrimination in Employment Act and the New York State Human Rights Law.

Second, Defendant argues that, even if Plaintiff can prove that Gullo created a hostile work environment, it satisfied its affirmative defense under *Faragher/Ellerth* because it promptly investigated and remediated Plaintiff's complaint. In fact, Defendant is not entitled to this affirmative defense as a matter of law because it provided no supporting evidence to this effect on the summary judgment motion.

Finally, while Defendant claims it properly demoted Plaintiff because of his job-performance issues, it overlooks how (1) Gullo, who harassed Plaintiff on the basis of age, participated in the decision to demote Plaintiff, and (2) the evidence permits the inference that Defendant is overstating the extent of Plaintiff's performance deficiencies.

**Point I**

**Plaintiff may prevail on the hostile work environment claim**

**A. The district court applied the wrong legal standard.**

Defendant argues that, contrary to Plaintiff's argument on appeal, the district court applied the correct standard in reviewing the age harassment claim. But, while Defendant notes that the district court correctly stated that plaintiffs must show the harassment was "severe *or* pervasive" (Def. Br. at 24) (emphasis in original), the district court only framed the inquiry that way in summarizing the legal standard as prelude to analyzing the record. (JA 269-270). When the district court turned to the facts in Plaintiff's case, it misstated the test, stating that Gullo's comments, "while inappropriate, were not so severe *and* pervasive that they constituted a hostile work environment." (JA 273) (emphasis supplied). In rejecting Plaintiff's claim, the district court applied the wrong legal test.

**B. The jury may find that Plaintiff suffered pervasive age harassment.**

In his Opening Brief, Plaintiff asserted that, over the course of six months prior to his demotion on August 30, 2017, as Plaintiff's supervisor, Gullo subjected him to multiple ageist insults, often in the context of disparaging Plaintiff's job performance. (JA 211 ¶ 4). Gullo called Plaintiff a "dinosaur" dozens of times and said he had been "hatched." (JA 211 ¶ 4). Gullo also ridiculed Plaintiff's "old man's" attaché case and said the handle was used as a cane. (*Id.*) The district court

2

further noted that Plaintiff alleged that Gullo repeatedly called him "grandpa" in the presence of his family members and district managers. (JA 271-72). Cases hold that hostile work environment plaintiffs are not required to recount each instance of harassment to make out a claim, and that they may prevail at trial by testifying that the offending supervisor made these comments repeatedly, proving pervasive harassment. (Opening Br. at 16-17) (citing *Pucino v. Verizon Wireless Comm.*, 618 F.3d 112, 119-120 (2d Cir. 2010), *Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997), and *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001)). Defendant does not distinguish any of these cases.

Instead, Defendant argues that (1) Gullo's comments were "stray remarks" (Def. Br. at 27-28, 30); (2) Plaintiff only identifies one offender, Gullo (*id.* at 29, 31); (3) Plaintiff did not report Gullo's comments to management until after Plaintiff was demoted, at which time Human Resources determined that discriminatory animus did not motivate Plaintiff's demotion (*id.* at 29-30); and (4) the ageist comments did not alter Plaintiff's work environment for the worse. *Id.* at 31. None of these arguments entitle Defendant to summary judgment.

### 1. Gullo's comments were not "stray remarks."

First, the "'stray remarks' doctrine is by no means dispositive" in hostile work environment cases. *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 389 (2d Cir. 2020). In *Rasmy*, this Court explained that "[i]n a claim of a hostile work

environment, the emphasis is on the hostility of the work environment as a whole, not the motivation of one decisionmaker, and liability is 'determined only by looking at all the circumstances.' A plaintiff must show merely that discriminatory incidents were 'sufficiently continuous and concerted to have altered the conditions of [the employee's] working environment.'" (*Id.*) While the "stray remarks" doctrine might be relevant if offensive comments are directed toward other employees, in hostile work environment cases, even "conduct not directly targeted at or spoken to an individual but purposefully taking place in his presence can nevertheless transform his work environment into a hostile or abusive one." (*Id.*) Since Gullo directed his ageist comments toward Plaintiff, these were not "stray remarks" but direct evidence in support of Plaintiff's hostile work environment claim.

The sole case in Defendant's brief in support of its "stray remarks" argument, *Bunk v. General Services Admin.*, 408 F. Supp. 2d 153 (W.D.N.Y. 2006), has no application to this case, as the plaintiff in *Bunk* alleged he was denied a position because of his age but did not assert a hostile work environment claim. In claiming the employer offered pretextual reasons for the promotion denial, the plaintiff argued in part "that he was asked questions about his retirement plans during the interview and also asserts that Santella used the term 'dinosaur' in reference to a co-worker's age." *Id.* at 158. As the employer had

4

substantial evidence for hiring another candidate, the "dinosaur" comment was a "stray remark." (*Id.*) As the plaintiff in *Bunk* did not assert a hostile work environment case, this analysis has no bearing on Ferrara's case.

### 2. Gullo's comments were enough to create a hostile work environment.

While Gullo was the sole offender, that does not entitle Defendant to summary judgment. It only takes one coworker or supervisor to create a hostile work environment, and Defendant cites no authority to the contrary. Defendant further implies that Plaintiff's allegations fall short because he has not presented any corroborative evidence, noting that Plaintiff did not notice Gullo's deposition and "Ferrara has relied exclusively upon his unsupported allegations contained [in] his untimely complaint that he made after his demotion." (Def. Br. at 29 n.2). Plaintiff did not notice Gullo for deposition because he had left the company by then and Plaintiff was unable to locate him. This may be why Defendant did not procure an affidavit from Gullo on the summary judgment motion. More important, a plaintiff's sworn, uncorroborated testimony is enough to avoid summary judgment. *See e.g. Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 875 (2d Cir. 1992) ("The jurors heard both the testimony of [the plaintiff] on the point and that of [another witness], which tended to contradict it. They were free to settle upon which witness they believed"); *Owens v. New York City Hous. Auth.*, 934 F.2d 405, 410 (2d Cir. 1991) (contention that the plaintiff's evidence is

"uncorroborated and not credible is a jury argument inappropriate on a motion for summary judgment where every reasonable inference is to be drawn in favor of the non-movant").

### 3. The timing of Plaintiff's complaint is not dispositive.

Nor is it dispositive that Plaintiff did not report Gullo's comments until after he was demoted. Whether Plaintiff complained at this time "to escape taking accountability for his poor job performance" (Def. Br. at 30) is for the jury, not a court on a summary judgment motion. Defendant cites no cases for the proposition that a hostile work environment case fails as a matter of law when the plaintiff lodges a complaint following an adverse employment action. Nor does Defendant cite any cases for the proposition that any delay in reporting a hostile work environment undermines that claim as a matter of law.

Defendant also argues that, when Plaintiff did complain about the hostile work environment, the company investigated his allegations and determined they lacked merit. (*Id*.) If Defendant is asserting that its internal investigation dooms Plaintiff's claim as a matter of law, it cites no legal authority for that proposition, and Defendant did not provide the details of its investigation on the summary judgment motion. In its Rule 56.1 statement, Defendant advanced the conclusory statement that "HR ultimately concluded that there was no discriminatory intent motivating Ferrara's demotion after completing an investigation." (JA 158 ¶ 92).

But the jury may find that this investigation (assuming it took place), concerned Plaintiff's demotion, not the hostile work environment, even though Plaintiff told Human Resources about Gullo's numerous ageist insults. (JA 218). While Defendant told Plaintiff in January 2018 that it had investigated his complaint, that email did not state whether the investigation concerned the hostile work environment or the discriminatory demotion, and this email was sent four months after Plaintiff had complained about the hostile work environment. (JA 221).

### 4. The harassment altered Plaintiff's work environment.

Finally, Defendant argues that Plaintiff has not established that the harassment altered his work environment. *See* Def. Br. at 31 ("Ferrara's working conditions did not change due to any animus based on age because he cannot show that his job performance significantly changed when Gullo became his supervisor," as Plaintiff's performance reviews had been subpar for years). This argument misunderstands the hostile work environment inquiry. Courts ask whether the "harassment [is] . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Under this framework, whether the harassment affects the plaintiff's job performance is only one factor. *See id.* ("Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is

threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance") (citing *Harris v. Forklift Sys.*, Inc., 510 U.S. 17, 23 (1993)). "Although the presence of physical threats or impact on job performance are relevant to finding a hostile work environment, their absence is by no means dispositive. Rather, the overall severity and pervasiveness of discriminatory conduct must be considered. By its very nature that determination is bound to raise factual disputes that likely will not be proper for resolution at the summary judgment stage." *Rasmy*, 952 F.3d at 390.

In any event, Plaintiff proffered evidence that the ageist harassment caused him significant emotional distress that he needed time off under the Family and Medical Leave Act, noting in his leave application on February 9, 2018 that the distress began in August 2017. (JA 91-98, 211). Plaintiff took leave under the FMLA through April 29, 2018. (JA 100-04). This evidence further supports the hostile work environment claim. *See Rasmy*, 952 F.3d at 390 (evidence that the harassment made the plaintiff "chronically nervous" and required psychiatric intervention "arguably gives rise to a strong inference" that his "workplace conditions had been materially altered").

### 5. The State Division of Human Rights determination has no preclusive effect.

Defendant notes that the State Division of Human Rights investigated Plaintiff's charge of discrimination and determined that "the investigation revealed

8

no evidence of discriminatory animus." (Def. Br. at 33 n.3). However, "the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims." *Astoria Fed. Sav. & Loan Assn. v. Solimino*, 501 U.S. 104, 110 (1991) (rejecting district court's finding "that the determination of the State's Human Rights Division that petitioner had not engaged in age discrimination precluded federal litigation of the claim"). In *Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706 (2d Cir. 2001), this Court held that "a determination of no probable cause by the DHR, absent a formal hearing and absent any subsequent review in state court," did not preclude "subsequent federal court litigation of an issue already decided by the DHR." *Id*. at 730-36. In that case, as here, the plaintiff submitted a complaint to the DHR and the parties exchanged responsive papers with supporting documents, but there was no discovery, interviews of witnesses, or any hearing. *Id*. at 734. As this Court could not "ignore[ ] that the DHR makes factual conclusions based on a record that is far less developed than that before a federal court," it held the plaintiff was not collaterally estopped from relitigating the issue. *Id*. at 735-36.

**C. Defendant is not entitled to the *Faragher/Ellerth* affirmative defense.**

Defendant argues that Plaintiff cannot prevail on the hostile work environment claim because he waited too long to complain about Gullo's comments and, once Plaintiff did complain, the company investigated and

9

determined that his complaints were unfounded. (Def. Br. at 33-34). The jury may find otherwise.

### 1. The jury may find that Plaintiff did not wait too long to complain about the harassment.

The record shows that, "over the course of six months to a year prior to [Plaintiff's] demotion on August 30, 2017, Gullo had referred to [him] as a 'dinosaur,'" having done so "dozens" of times in criticizing Plaintiff's job performance. (JA 211 ¶ 4). Gullo called Plaintiff a dinosaur a few weeks prior to his demotion. (*Id.*) Plaintiff complained to Human Resources about Gullo's discrimination on September 1, 2017. *Id.* at ¶ 6. Under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Ellerth v. Burlington Indus.*, 524 U.S. 742 (1998), the plaintiff must "act with . . . reasonable care to take advantage of the employer's safeguards and otherwise to prevent harm that could have been avoided." *Faragher*, 524 U.S. at 805.

The EEOC has provided guidance on this issue:

A determination as to whether an employee unreasonably failed to complain or otherwise avoid harm depends on the particular circumstances and information available to the employee *at that time*. An employee should not necessarily be expected to complain to management immediately after the first or second incident of relatively minor harassment. Workplaces need not become battlegrounds where every minor, unwelcome remark based on race, sex, or another protected category triggers a complaint and investigation. An employee might reasonably ignore a small number of incidents, hoping that the harassment will stop without resort to the complaint process. The employee may directly say to the harasser that

10

s/he wants the misconduct to stop, and then wait to see if that is effective in ending the harassment before complaining to management.[1] (Emphasis in original).

As Gullo called Plaintiff a dinosaur only a few weeks before Plaintiff reported this harassment to management, in assessing the affirmative defense under *Faragher/Ellerth*, the jury may find that Plaintiff did not wait too long to complain. *See Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1057-58 (9th Cir. 2007) ("[W]e do not think that in this situation a 19-day delay is unreasonable; an employee in Craig's position may have hoped the situation would resolve itself without the need of filing a formal complaint, and she justifiably may have delayed reporting in hopes of avoiding what she perceived could be adverse – or at least unpleasant – employment consequences"); *Clegg v. Falcon Plastics, Inc.*, 174 Fed. Appx. 18, 26 (3d Cir. 2006) (where plaintiff waited approximately four months before reporting the offensive conduct, and "did not report much of the conduct that she later alleged in her complaint and her deposition, . . . the reasonableness of the delay in reporting is a question of fact for a jury to decide") (citing *Cardenas v. Massey, 269 F.3d 251, 267 (3d Cir. 2001)* ("Cardenas' reluctance to file a formal complaint for fear of aggravating the situation or branding himself a troublemaker might not

---

[1] https://www.eeoc.gov/laws/guidance/enforcement-guidance-vicarious-liability-unlawful-harassment-supervisors. (D). Second Prong of Affirmative Defense: Employee's Duty to Exercise Reasonable Care.

11

have been unreasonable")); *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999) ("There is at least a genuine issue of material fact such that a reasonable juror could decide against Kroger on this point. Watts alleges that her supervisor's harassment intensified in the spring of 1994. A jury could find that waiting until July of that same year before complaining is not unreasonable").

### 2. There is no evidence that Defendant investigated Plaintiff's harassment complaint.

Defendant asserts that it timely investigated Plaintiff's complaint about Gullo's harassment. Under *Faragher/Ellerth*, this affirmative defense requires the employer to show that it "exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010). Defendant has proffered no concrete evidence to establish this defense as a matter of law. As Plaintiff argues in his Opening Brief at 20-21, the jury may find that Defendant's investigation examined why Plaintiff was demoted, not whether he suffered a hostile work environment, and the email exchanges between Plaintiff and Human Resources suggest the company had unreasonably delayed the investigation in any event, as Defendant's January 2018 email stating it had investigated his complaint was sent more than four months after Plaintiff first complained about his work environment. (JA 221).

While Defendant cites Plaintiff's testimony that Human Resources assured him that it was investigating his complaint (Def. Br. at 33-34) (citing JA 30 at

171), that testimony sheds no light on the scope of the investigation, or whether Defendant undertook the investigation in good faith. For this reason, without anything to support Defendant's argument that Human Resources told Plaintiff that his complaints were unsubstantiated (*id.*) (citing JA 85-88), Plaintiff's testimony on this point proves nothing, as he had no first-hand knowledge of the investigation. On the summary judgment motion, Defendant did not show (1) whom it interviewed during the investigation, or whether it even questioned Plaintiff or Gullo; (2) what documents it reviewed; (3) who participated in the investigation; (4) how it attempted to corroborate Plaintiff's allegations; and (5) whether the investigation complied with accepted internal and external practices.[2]

### 3. The jury may find that Gullo's reassignment had nothing to do with Plaintiff.

Nor has Defendant conclusively established that it took "swift remedial action" in response to Plaintiff's complaint. Defendant notes that Gullo stopped supervising Plaintiff following the latter's demotion. (Def. Br. at 34). However, in its Rule 56.1 Statement, while Defendant noted that the company assigned Plaintiff another supervisor following his demotion (JA 156 ¶ 82) (citing JA 28 at 162-63), the record does not show that Gullo's harassment was the reason for this personnel change. In any event, if Gullo was removed as Plaintiff's supervisor at that time

---

[2]

www.dol.gov/sites/dolgov/files/OASAM/crc/files/SexualHarassmentInvestigation Guidelines.pdf

based on his ageist comments (a questionable proposition since Defendant has claimed throughout this litigation that Gullo did not create a hostile work environment), that is not enough to entitle Defendant to summary judgment. *See Harrison v. Eddy Potash, Inc.*, 248 F.3d 1014, 1026 (10th Cir. 2001) (rejecting proposition "that an employer's prompt corrective action can be sufficient by itself to avoid vicarious liability under Title VII for sexual harassment committed by a supervisory employee").

## Point II

### Plaintiff may prevail on his retaliation claim

Defendant argues that, even assuming Plaintiff made out a *prima facie* case of retaliation, he cannot prove that Defendant's articulated justification was a pretext because "Ferrara had a long history of well-documented performance issues stemming from his time as a District Manager when he was overseen by two different supervisors." (Def. Br. at 37). Defendant further argues that "Ferrara's demotion was recommended by several other employees, including Jennifer Hammond and Brian Watson," neither of whom made ageist comments toward Plaintiff. (*Id.*) (citing JA. 256-58). These arguments improperly draw inferences favorable to Defendant's position.

**A. Gullo participated in the decision to demote Plaintiff, tainting the process as a whole.**

Defendant recognizes that Hammond, Watson, and Gullo made the decision to demote Plaintiff. (Def. Br. at 11-12). As Defendant notes that Hammond and Watson "joined in the recommendation to demote Plaintiff from his position" (JA 256 ¶ 3; JA 257 ¶ 3), the reasonable inference is that Gullo made the recommendation and put this decision on the table in the first instance. Gullo's role was critical since he was Regional Vice President and Plaintiff's direct supervisor when Plaintiff was demoted. (JA 26 at 58). Gullo also drafted the negative performance evaluations and counseling memos that immediately preceded this adverse personnel action. (JA 76-77 [November 8, 2016]; JA 79-80 [March 8, 2017]; JA 82-83 [June 2017]). Gullo's role in Plaintiff's demotion would therefore take center stage at trial. The jury may regard these evaluations and memos as tainted by Gullo's stereotypical belief that Plaintiff was too old to properly discharge his duties. The jury may further find that, in light of his ageist views, Gullo's role in making the demotion decision tainted the process as a whole. The jury must assess whether, and how, Plaintiff's performance issues, or Gullo's stereotypical views on older employees like Plaintiff, motivated Plaintiff's termination. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999) ("the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII. This is true even

absent evidence of illegitimate bias on the part of the ultimate decision maker, so long as the individual shown to have the impermissible bias played a meaningful role in the promotion process"); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008) (same).

### B. Gullo's comments about Plaintiff's age are relevant to the demotion claim.

Defendant argues that Plaintiff fails to allege "that several of individuals involved in the decision to demote him made any comments about his age," and that "[s]tray remarks, 'even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination.'" (Def. Br. at 37-38). This argument does not entitle Defendant to summary judgment.

"[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. . . . The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *see also id*. (relevant to this analysis is (1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker), (2) when the remark was made in relation to the employment decision at issue, (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as

discriminatory), and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)).

The jury may find Gullo's remarks were not stray remarks but direct evidence of discriminatory intent. As a decisionmaker, Gullo made ageist remarks relating to Plaintiff's job performance, as Gullo said in part that Plaintiff was a "dinosaur" who did not know how to speak with younger managers, did not understand millennials, and did not know how to be a "modern day" manager. These comments took place six months to a year prior to Plaintiff's demotion, and Plaintiff told Gullo to stop making these comments one day before Gullo demoted him.

### C. The jury may reject Defendant's claim that Plaintiff was a poor performer.

Defendant overstates the extent of Plaintiff's performance deficiencies. In his Opening Brief at 2-5, Plaintiff emphasized that, despite his negative write-ups and reviews (some of which were drafted by Gullo, rendering them unreliable due to Gullo's discriminatory views), from 2014 through July 2017 (one month prior to his demotion), Plaintiff was frequently commended for his job performance and received numerous awards and certificates of achievement on a variety of performance-related matters. Moreover, as Plaintiff notes in his Opening Brief at 25-26, contrary to the district court's opinion, Plaintiff presented evidence that "he won . . . awards in the latter half of 2016 or 2017, which would have been within

the year leading up to his demotion." (JA 283). On appeal, Defendant ignores these commendations, stating only that Plaintiff "cherry-pick[s] certain data" in an effort to "mischaracterize[] his prior years of poor job. (Def. Br. at 37). At trial, the jury must reconcile the negative write-ups with these awards and commendations, and it may determine based on common sense and its own experience in the workplace that, even if there was room for improvement in increasing jewelry sales at Defendant's outlets, Plaintiff was a much better employee than management suggested on the summary judgment motion, and that the performance reviews are not the final word on his value as a district manager.

## Conclusion

This Court should vacate the grant of summary judgment on Plaintiff's age discrimination and hostile work environment claims.

Dated: September 27, 2023

Respectfully submitted,

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277

Counsel for Plaintiff-Appellant

## Certification

Stephen Bergstein, counsel for Plaintiff-Appellant, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 4,128 words.

Stephen Bergstein